OSBORNE (SEYMOUR v.). See Case No. 12,-688.

## Case No. 10,598.

### OSBORNE et al. v. SHRIEVE et al.

[3 Mason, 391.] [1]

Circuit Court, D. Rhode Island. June Term, 1824.

#### ESTATE TAIL—REMAINDER.

A. devised an estate to his son "I. S. and to his male heir" (in the singular) "and to his heirs and assigns for ever; but if it should so be, that I. S. should depart this life, leaving no male heir lawfully begotten of his body as aforesaid," then to the testator's grandson W. O. in fee. *Held*, that I. S. took an estate tail with remainder over to W. O. on the indefinite failure of the issue of I. S.

[Cited in Buxton v. Uxbridge, 51 Mass. (10 Metc.) 92; Malcolm v. Malcolm, 57 Mass. (3 Cush.) 482. Cited in brief in Brownell v. Brownell, 10 R. I. 510–512; Andrews v. Lowthrop, 17 R. I. 60, 20 Atl. 97.]

Ejectment. The case came on upon a statement of facts agreed by the parties as follows: It is agreed that the plaintiffs [Willard Osborne and others] are the heirs at law of Weaver Osborne, the grandson of the testator William Shrieve; and to whom the testator devised the premises demanded in manner as set forth in said testator's will; that the defendants [Nancy Shrieve and others] are in possession of the premises demanded, devised as aforesaid, and claimed by the plaintiffs under said devise; that on the 14th of January, 1772, the testator was

---

[1] [Reported by William P. Mason, Esq.]

seized and possessed in his own right in fee simple of the demanded premises, and that on said day he made his last will and testament, and executed the same in due form of law; that he died seized and possessed in his own right as aforesaid of said demanded premises; that afterwards, to wit, on the 9th of May, 1772, said will was duly proved and approved, and that the annexed copy thereof is a true copy of the original. It is agreed, that John Shrieve, the son of the testator, named as devisee in said will, had at the date of said will a son, and only one son then living, lawfully begotten, and who survived the testator, but died in the life time of his father; that after and upon the death of the testator the said John Shrieve entered upon and took possession of the said demanded premises under the said will; that afterwards, to wit, on the ——, said John Shrieve instituted proceedings for suffering a common recovery of the demanded premises to his use, which proceedings were such as are detailed in the record thereof, a copy of which is hereto annexed, which it is agreed is a true copy of the record. It is agreed, that said John Shrieve died on or about the —— day of July, 1823, leaving no son living at his death; that the said Weaver Osborne died on or about the —— day of ——, and previous to the death of said John Shrieve; and that the plaintiffs are his, the said Weaver Osborne's heirs at law. It is agreed, that the devise in said will, under which arises the controversy between the parties, is in the words following, to wit: "Item, I give and bequeath unto my well beloved son, John Shrieve, and to his heir male lawfully begotten of his body, and to his heirs and assigns for ever, all my homestead farm, with all and singular the houses, buildings, fences, orcharding, woods, ways, watering privileges and appurtenances thereto belonging, reserving for a term, what is before reserved, and for the use before mentioned, to him by said son John Shrieve, and to his male heir lawfully begotten of his body as aforesaid, and to him, his heirs, and assigns for ever; but if it should so be that my son John Shrieve shall depart this life leaving no male heir lawfully begotten of his body as aforesaid, then the abovesaid homestead, with all the privileges and appurtenances to the same belonging, shall descend to be my grandson Weaver Osborne's heirs and assigns for ever." It is agreed, that the said John Shrieve, on the 5th day of April, 1808, made his last will and testament, and therein devised the disputed premises to his wife Anna Shrieve (one of the defendants) for life, then to John B. Mumford for life, then in fee to Benjamin the son of said John B., but if the said Benjamin should die in the lifetime of his father without legal issue, then to all the male children of said John B. in fee; and that said will on the first September, 1823, was duly proved and approved; a copy of

which will is hereto annexed and agreed to be a true copy. It is agreed that the said Anna Shrieve one of the defendants is in possession of the premises under the devise to her in said last will and testament of the said John Shrieve, that John Grinnel, the other defendant, is tenant under said Anna Shrieve.

Robbins & Searle, for plaintiff.
Hunter & Hazard, for defendants.

STORY, Circuit Justice. This cause has been very elaborately argued. I have examined all the authorities cited at the bar, and beyond them my own researches have not been inconsiderable. The result of my own judgment, upon the fullest deliberation, I will now endeavour to give in as summary a manner as I can.

. The terms of the devise are, "I give and bequeath unto my well beloved son John Shrieve and to his male heir lawfully begotten of his body, and to his heirs and assigns for ever, all my homestead farm &c. to him my said son John Shrieve and to his heir male lawfully begotten of his body as aforesaid, and to him, his heirs and assigns for ever. But if it should so be, that my said son John Shrieve shall depart this life, leaving no male heir lawfully begotten of his body as aforesaid, then the abovesaid homestead with all the privileges &c. shall descend to be my grandson Weaver Osborne's, his heirs and assigns for ever." The controversy is between certain devisees claiming under John Shrieve, and. the heirs at law of Weaver Osborne; and the question is, what estate John Shrieve took in the premises by the above devise of his father. If he took an estate for life with remainder to his male heir in fee tail, with remainder over to Weaver Osborne in fee, then in the events, which have happened, the plaintiffs are entitled to recover. If, on the other hand, John Shrieve took an estate tail, then by the recovery suffered by him that estate was docked, and the remainder over in fee to Weaver Osborne was thereby extinguished, and the defendants are entitled to judgment.

My opinion is, that John Shrieve took under the devise an estate in fee tail male, and that Weaver Osborne took a remainder in fee upon the indefinite failure of the issue of John Shrieve. My reasons for this opinion are shortly these. The first clause in the devise gives the premises to "John Shrieve and his male heir" (in the singular). If it had stopped here, it would have given a clear fee tail male to John Shrieve. The case of White v. Collins, Comyn, 289, and Dubber v. Trollope, 2 Amb. 453, are directly in point. In the latter case, which was stronger than the present, the devise was to T. T. for life, and after to his first heir male; and it was held a fee tail male in T. T. Lord Chief Justice Eyre delivered the opinion of the court in a most elaborate argument, in

which he examined all the authorities and established, that the words clearly gave an estate in fee tail male; and this judgment was afterwards affirmed upon a writ of error. It is therefore of very high authority. But the clause does not stop here (i. e. "to John Shrieve and his male heir") but the words are added "and to his heirs and assigns." If the devise had stopped here, then, I conceive, that it would have given an estate for life to John Shrieve, and an estate in fee to his male heir as a purchaser. In short, "male heir" could not be, under such circumstances, words of limitation, but words of purchase. This appears to me to be clear by the authority of Archer's Case, 1 Rep. [Coke] 66; Loddington v. Kime, 1 Salk. 224; Long v. Laming, 2 Burrows, 1100, 1110; and many other cases. See Blackburn v. Stables, 2 Ves. & B. 371. I pass over the next words as a mere repetition, in the nature of an habendum. But the subsequent clause of the will controls the inference deducible from these words, and limits their signification, so as to show, that the testator intended a fee tail male in John Shrieve, and nothing in his male heir as a purchaser. It is, "but if it should so be that my son John Shrieve shall depart this life, leaving no male heir lawfully begotten, &c. &c. then the abovesaid homestead &c. shall descend to be my grandson William Osborne's, &c."

In the first place, it is clear from this clause, that the testator did not intend the devise to be solely to the son of John Shrieve, then born, in fee, under the description of "heir male," as descriptio personæ, for the estate is intended for the benefit of any person whatsoever, who should be the heir male of John Shrieve. It is not to pass over to Weaver Osborne so long as there shall be any heir male of John Shrieve living. In the next place, the intention is clear that, upon the failure of issue male, the estate should go to Weaver Osborne. The language of the clause cannot be construed to restrict the failure of issue male to the death of the testator, for that would be a construction against the general current of authority. Words of this nature have never been held, in a devise of freehold estate, to import any thing but an indefinite failure of issue. If then the estate were to be construed a fee simple in the heir male of John Shrieve, it would entirely defeat the devise over to Weaver Osborne, for as an executory devise it would be too remote. The testator's intention would, in another respect, be also defeated. He obviously intended the devise for the benefit of the heirs male so long as there should be any; but if the first heir male could take a fee simple, it would be alienable by him, and the descent of the estate, even if he retained it, would not be in the line of his heirs male, but of his heirs generally. So that to effectuate the purposes of the testator, it is necessary to construe

the present devise a fee tail in John Shrieve, which will carry the estate in succession to his heirs male, with a remainder over, upon the indefinite failure of issue, to Weaver Osborne. This conclusion is not in the slightest degree impugned by the consideration, that the words are "heir male" instead of "heirs male," for the former, as the cases above cited abundantly show, may be construed words of limitation, as well as the latter. See Fearne, Rem. (Butler's Ed.) 150, 160, 178, 179; Harg. Note, Co. Litt. 8b, note 45; Blackburn v. Stables, 2 Ves. & B. 367, 371; Wright v. Pearson, 1 Eden, 119, 128. Even the words "issue" and "issue male," which are more usually words of purchase, have often received in the like connection an interpretation, as words of limitation. Roe v. Grew, 2 Wils. 322; Frank v. Stovin, 3 East, 548; Denn v. Puckey, 5 Term R. 299; Doe v. Applin, 4 Term R. 82; Doe v. Collis, Id. 294; Backhouse v. Wells, 1 Eq. Cas. Abr. 184, pl. 27; King v. Burchell, 1 Eden, 424, 432, and note 433.

If the case then were entirely new, I should not hesitate to give the construction to the devise, which I have already intimated, as the only one, which will effectuate the general intention of the testator. But the question hardly appears to me to be open. Where a rule has long prevailed in the construction of devises, or courts of law in a series of adjudications upon the import of mixed clauses, like the present, have adopted a uniform interpretation, a departure from them cannot but have a tendency to shake titles, and deliver the subject over to interminable doubts. The case of Goodright v. Pullyn, 2 Ld. Raym. 1437, is very strongly in point. There the devise was to A. for his life, and after the decease of the said A. unto the heirs male of the body of the said A. lawfully begotten, and his heirs for ever; but if the said A. should happen to die without such heir male (in the singular), then to B. for life, and after his death to the use of the heirs male of the body of the said B. lawfully issuing, and his heirs for ever. It was held, that A. took an estate in fee tail, notwithstanding the express limitation of a life estate to him, and the clause to the heirs male of A. and his heirs for ever, and the explanatory clause, if he should die without heir male (in the singular). Wright v. Pearson, 1 Eden, 119, 1 Amb. 358,—see Fearne, Rem. (Butler's Ed.) 126,—is to the same effect. There, the devise was to A. for life, remainder to trustees to support contingent remainders, remainder to the use of the heirs male of A. lawfully to be begotten and their heirs; provided that in case A. should die without leaving any issue male of his body living at his death, then and in such case the premises to be subjected to the payment of two legacies of £100 each, &c. and for default of such issue male of A. then to the use of all and every his (the testator's) five grand children, or

such of them as should be living at the time of the failure of the issue male of A., to take as tenants in common &c. Upon very full argument Lord Keeper Henley held, that A. took an estate tail. Then came Denn v. Shenton, Cowp. 410, where the devise was to A. and the heirs of his body lawfully to be begotten, and their heirs for ever; but in case A. should die without leaving issue of his body, then to B. and his heirs for ever. Lord Mansfield and the other judges held, that A. took a fee tail. Alpass v. Watkins, 8 Term R. 516, and Morris v. Ward, therein cited, proceed upon the same principles, and are quite as cogent and decisive upon the construction of such devises. The case of King v. Burchell, 1 Eden, 424, 1 Amb. 379; 4 Term R. 296, note,—see Fearne, Rem. (Butler's Ed.) 163, 180, 183,—is, stronger, for there the devise was to A. for life, and after the determination of that estate to the issue male of A. lawfully begotten and to his and their heirs, share and share alike, and for want of such issue, then the issue female of A. lawfully begotten to her and her heirs, share and share alike, if more than one; and for want of such issue. then to B. in fee. Here the word "issue" was used, which has been often construed a word of purchase, and more readily yields to that construction than "heir," or "heirs"; and the words "to his and their heirs," were added; and yet the court held, that A. took fee tail. Roe v. Grew, 2 Wils. 322, is of a similar import, and this case was recognized and followed in Frank v. Stovin, 3 East, 548. I am not aware of any case, which shakes the inferences justly deducible from these cases, or controls the full weight of their authority. Doe v. Jesson, 5 Maule & S. 95. looks the most the other way; but that is distinguishable, and has been reversed in the house of lords, 2 Bligh, 1. Believing, therefore, that in so doing I shall follow the plain direction of the authorities, and carry the general intention of the testator into effect, I hold, that John Shrieve took an estate tail. and that therefore judgment ought to be entered for the tenants. Judgment accordingly.