# SUPREME JUDICIAL COURT

FOR THE

### COUNTY OF WORCESTER, SEPTEMBER TERM 1845, AT WORCESTER.

．━━━━━━

PRESENT

HON. LEMUEL SHAW, CHIEF JUSTICE.
HON. SAMUEL S. WILDE,
HON. CHARLES A. DEWEY, } JUSTICES.
HON. SAMUEL HUBBARD,

---

LUTHER BUXTON *vs.* INHABITANTS OF UXBRIDGE.

A testator devised one half of certain real estate to his "son John and the heirs lawfully begotten of his body, and their heirs and assigns." *Held*, that the first words gave an estate tail to John, and that the words "their heirs and assigns" did not enlarge the devise to a fee simple, either to him or the heirs of his body.

One undivided half of certain land was devised to A. in fee simple, and the other half to B. in fee tail general : A. and B., before the passing of *St.* 1791, *c.* 60, made partition of the land, by deed, each releasing to the other, his heirs and assigns forever, that part which was set off to the other : B. conveyed, by deed of warranty, that part of the land which was thus set off to him to S., who conveyed it to T., and T. to U. Upon the death of B., L., his heir in tail, brought a writ of entry against U to recover possession of said land. *Held*, that L. was entitled to recover one moiety thereof, and no more

WRIT OF ENTRY to recover eighteen acres of land in Uxbridge. Trial before *Shaw*, C. J. whose report thereof was as follows :

" The demandant claimed title to the demanded premises as

tenant in tail, and derived the same from John Buxton, son and devisee of Benjamin Buxton, under the last will of said Benjamin, who died in the year 1780, leaving two sons, James and John. John had ten children, the eldest of whom was Timothy, who died more than forty five years since, leaving the demandant his only child. John died in the year 1839.

" The devise to John, in the last will of said Benjamin, was in the following words : ' I give and bequeath to my son James Buxton, his heirs and assigns, eight acres of land in that lot of land I purchased of my brother Caleb Buxton ; and I will that my son James Buxton, his heirs and assigns, have the other half of my estate, both real and personal, not otherwise disposed of. And the other half of my estate, both real and personal, I give and dispose of as followeth, viz. the one half of all my lands, except the eight acres given to James, to my son John Buxton, and the heirs lawfully begotten of his body, and their heirs and assigns, and all the remainder of my moveable estate.'

" In the year 1783, John and James Buxton made a deed of partition of the estate devised to them by said last will, in this form : ' This instrument of deed of partition, made by and between James Buxton and John Buxton, witnesseth that they have made partition of the lands and tenements left them by their father Benjamin Buxton, in his last will and testament. That is to say, we have agreed to set off to James aforesaid the following parts or parcels of land belonging to said estate.' [Here three parcels of land were described by metes and bounds.] ' And the remaining parts and parcels of land belonging to said estate we have set off to John aforesaid ; to have and to hold the first mentioned parts of said lands and tenements to the said James Buxton, and the remaining parts thereof to the said John Buxton, to them, their heirs and assigns forever, in severalty. And we, the said James Buxton and John Buxton, do hereby mutually, for ourselves and our heirs, release and forever quitclaim to each other, his heirs and assigns forever, all right, title, interest,

claim or demand, which we have in or unto that part of said land and tenements which is hereby divided off to the other; hereby establishing, ratifying and confirming the aforementioned and·no other to be the division between us.   In witness whereof we have hereunto set our hands and seals this sixth day of the twelfth month 1783.

James Buxton (seal.)
John Buxton (seal.)'

" This deed was acknowledged, January 15th 1789, and recorded on the 6th of March following.

"It was admitted that the demanded premises were not embraced in the parts of the estate released to said James by said deed; and that said John conveyed the demanded premises, by deed of warranty, to Nicholas Batty, January 19th 1789. Said Batty, by a similar deed, conveyed the same to Comins Taft, April 1st 1807, who, having released an undivided half thereof to Ezra Taft, joined with said Ezra in conveying the estate to the tenants, by a warranty, on the 31st of March 1831.

" These facts having appeared, and the jury having found that the demanded premises were a part of the estate devised by the last will of Benjamin Buxton, a verdict was returned, under the direction of the presiding judge, in favor of the demandant, for one undivided half of the demanded premises, with an agreement of the parties that the verdict should be amended according to the opinion of the whole court, if they should be of opinion that the demandant had a right to recover the whole, or only a less part, of said demanded premises ; or reversed and entered as a verdict for the tenants."

The argument was had at the last October term.

*Washburn*, for the demandant.   The devise to John was of an estate tail in a moiety.   4 Dane Ab. 631.   The words " their heirs and assigns," added to " the heirs of his body," did not enlarge the estate.   *Corbin* v. *Healy*, 20 Pick. 514. The effect of the deed of partition was not to make the estate of James, in the part set off to him, a fee simple ; because the deed was made before the *St.* of 1791, *c.* 60, enabled tenants

8 *

in tail to bar the issue in tail, by conveying the estate in fee simple. The partition, therefore, was a mere division of the occupancy during the life of John. Lit. § 255. Co. Lit 166, a. 170 a. 173 b. Allnatt on Partition, 31, 32.

*Chapin*, for the tenants. All parts of the will are to be taken together, and all the words are to have effect, if by law it be possible. " Their heirs and assigns," after " the heirs of his body," must have some meaning ; and they either enlarge the estate to a fee simple in John alone, or give a fee simple to John and his heirs, as tenants in common, or to his heirs after his death.

But if an estate tail was devised, and half of the devised land vested in James in fee simple, and the other half in John in fee tail, how has the partition affected the title ? It was an attempt by James and John to convey, each to the other, a certain portion of the land, and could have no more effect, so far as John was concerned, than any other deed of conveyance made by him, at that time. But though he could not then bar the issue in tail by any deed, and therefore nothing passed by his deed, besides his life estate, yet James could and did give to John, by deed, a valid title in fee to an undivided moiety of the demanded premises ; and as the tenants hold those premises by various mesne conveyances, they have a valid title to the moiety which passed from James to John. The fact that John conveyed only an estate for life to James, when James conveyed a fee to him, cannot affect the title of a purchaser holding the estate by virtue of mesne conveyances.

HUBBARD, J. The clause in the will of Benjamin Buxton, upon the construction of which the ‎case principally depends, is as follows : " And the other half of my estate, both real and personal, I give and dispose of as followeth, viz. the one half of all my lands, except the eight acres given to James, to my son John Buxton and the heirs lawfully begotten of his body, and their heirs and assigns, and all the remainder of my moveable estate." It is argued that the words " heirs and assigns ' must be construed to have some meaning ; and that, by giving

them their appropriate signification, they enlarge the gift to a fee, and consequently the demandant has no estate in the demanded premises. But we are of opinion that the words do not enlarge the devise. It is a common rule of construction. that general words are to be limited and restrained by the subject to which they immediately relate, and are not to be construed as conferring a larger or different grant or power than the distinct grant or power created by the specific words. In this case, to give the construction contended for, would be directly to change the nature of the estate specifically created, and to defeat the object of the grant. In cases where a subsequent clause is clearly repugnant to preceding clauses, the clause must be rejected as not expressing the intent of the donor or grantor, and as the only legal mode of carrying into effect imperfect instruments. But in the case now before us, we do not think the clause repugnant, nor that the words were intended to enlarge, or that they do enlarge, the estate previously created ; but that the clauses may stand together, and that they intend merely to express the nature of the estate, as one of inheritance beyond the immediate heirs of the first taker, and are but a repetition of the gift. The words " heirs and assigns " are qualified and restrained by the words " heirs of the body," which last show clearly the intention of the testator to create an estate tail ; and whether the restraining words succeed or precede the more general words, they operate, in either case, to limit the gift or grant, if the intention is clearly expressed by such restraining words ; as in *Soulle v. Gerrard,* Cro. Eliz. 525, where Richard Baker, being seized of land in fee, and having four sons, devised his land to his son Richard and his heirs forever, and if he should die within the age of twenty one years, or without issue, then to his three other sons. The devisor died, and Richard, the devisee, had issue, a daughter, and died within age ; and it was adjudged that he took an estate tail, and that the daughter was entitled to the estate. So in *Clache's case,* Dyer, 330 *b,* where a grant to A. and her heirs forever was restrained by the subsequent words, " having no issue." See also *Corbin*

v. *Healy*, 20 Pick. 514, where one Marcy executed a deed to his daughter Rhoda. The words were, " unto the said Rhoda, and to her heirs born of her body, to be to her and them forever ; " and afterwards, in the habendum, were the words " to have and to hold the same to her and her heirs forever." The grantor also covenanted with her, and her heirs as aforesaid, that he would " warrant and defend the same to her and her heirs aforesaid." In that case, the court held that the words in the habendum did not enlarge the estate to a fee simple, but that the generality of the word " heirs," in the habendum, was limited to those heirs who by law could take that estate, namely, heirs of her body. See also Co. Lit. 21 *a.* Perk. §§ 170, 171. *Osborne* v. *Shrieve*, 3 Mason, 391.

This disposes also of the second point raised, to wit, that if there was an estate tail in the first taker, the fee vested in the heirs of Timothy, and that his eldest son did not take the estate as tenant in tail, and so the demandant, though an heir and the eldest son of Timothy, would only be entitled to one tenth part of the estate. Upon the authorities above cited, it is clear that the estate was not enlarged in the heir of the tenant in tail, by the subsequent words, and consequently the eldest son of John took an estate tail, and not an estate in fee ; and under him the demandant claims as heir in tail.

We are now called upon to consider the construction to be given to the deed of partition between the two brothers, John and James Buxton, made shortly after the death of their father. And the question is, whether the legal effect of this partition was, to give John Buxton an estate tail in the whole of the lands set off to him in severalty, and to James Buxton an estate in fee in the portion set off to him ; or, admitting that it would not bind the heir of the tenant in tail, if he chose to avoid it after the death of the tenant in tail, yet if he now comes in and affirms the partition, whether he cannot establish it, and thereby entitle himself to claim the whole of the demanded premises.

This partition was not made under any legal process, but

was the mere agreement of the parties ; and it is very clear, we think, that it could not bind nor affect the heir in tail, though it would be binding on the tenant in tail during his life. Co. Lit. 170 *a*. 173 *b*. *Soule* v. *Soule*, 5 Mass. 64. And although such a division of the estate might be a reasonable and fair one, yet the legal power was wanting to carry into effect their intent in its full extent. The deed itself, however, was not a simple partition during the life of the tenant in tail, because James, who was seized in fee of an undivided half of the estate, by force of the partition deed, conveyed an estate in fee to John and his heirs, in half the premises assigned and transferred to John in said deed, while he, in return, took but an estate for life in half the premises released and conveyed to him by John, who had no right or power to pass a larger estate. We are therefore of opinion that, by the deed of John Buxton to Nicholas Batty, an estate in fee passed to him in an undivided half of the premises conveyed to him, and an estate of freehold, during the life of John, in the other undivided half. This deed was made so long ago as January 1789, but John Buxton not dying till 1839, the right of the heir in tail has not been affected by the lapse of time, although Batty's estate has passed to other persons, under whom the tenants claim.

Whether the heir in tail could have affirmed the partition after the death of the tenant in tail, if he had made no conveyance during his life time, we are not called upon to consider, because, after the transfer to Batty, other persons acquired rights in the lands, which could not be affected by any election of the heir in tail to affirm the partition.

With these views, we are of opinion that the demandant has established his title to one half of the demanded premises ; and his remedy, if he has any, for his further interests in the lands devised in tail, must be pursued against the other owners of the entailed estate.

Judgment is to be entered on the verdict for an **undivided** moiety of the demanded premises.