### FRANCIS MALCOLM *vs.* ANN MALCOLM & another.

In the construction of a will, the intention of the testator, so far as it can be col lected from the will itself, if it be not contrary to the rules of law, must govern, and if the testator have expressed two intentions legally inconsistent, the court will stand in the place of the testator, and give effect to that one which the tes tator would have preferred, if driven to choose between the two.

Under the following devise in a will, " I give and bequeath to my grandson D. my dwelling-house wherein I now live, he to take possession of the same at the age of twenty-one years; to hold the same to him during his life; and at and upon his decease, I give the same dwelling-house to the eldest male heir of his body lawfully begotten, and upon the decease of such male heir, to the male heir of said deceased and his heirs forever. And in case my said grandson shall not leave any male heirs, I then give said house to his next eldest brother during his life, and upon his decease to his eldest male heir, lawfully begotten, and to his heirs forever : " It was held, that D. took an estate tail.

THIS case, which was a writ of entry, was submitted to the court upon the following statement of facts : —

The demandant claims certain premises in Hanover street, in Boston, described in the writ, which were devised by his great-grandfather, Michael Malcolm, 1st, by his will dated August 24th, 1774, and a codicil thereto dated November 22d, 1774. This will was proved at the probate court in Boston, February 24th, 1775, and contained the following clause touching the premises in question : —

---

"I give and bequeath to my said grandson Daniel my dwelling-house and land in Middle street, wherein I now live ; he to take possession of the same at the age of twenty-one years ; to hold the same to him during his life ; and at and upon his decease I give the same dwelling-house and land to the eldest male heir of his body lawfully begotten, and upon the decease of such male heir, to the male heir of said deceased and his heirs forever. And in case my said grandson shall not have any male heirs, I then give said house and land to his next eldest brother during his life, and upon his decease to his eldest male heir lawfully begotten and to his heirs forever."

A codicil to the will contained the following provision : "I hereby disannul and make void the bequest of fifty pounds therein made to my grandson, Daniel Malcolm, and the interest thereof, and I give the same to my son William, and my daughters Wise and Campbell, in equal parts. And as to my dwelling-house and land bequeathed to my said grandson for life, I order that he shall not have possession thereof until he attains the age of twenty-two years, nor then, unless he lives a sober, virtuous life, and as shall be to the approbation of my executors, or a major part of them ; but I hereby disannul said bequest as to my said grandson, and give said house and land in the manner mentioned in my said will."

Daniel Malcolm, the grandson of the testator, and father of the demandant, took possession of the demanded premises under the will, and held it until his death, which took place on the 22d February, 1839. He left three sons, Michael, James, and Francis, and a daughter, Henrietta Rudd, all of whom were born long after the decease of the testator.

Michael Malcolm, 2d, the eldest son of Daniel, took possession of the same premises under the will upon the decease of his father, and held them until the levy of the execution hereinafter mentioned on the 5th May, 1840. He had a son and a daughter. The son died June 6th, 1841. The daughter is still living. Michael Malcolm, 2d, died August, 1843. James

40 *

Malcolm died in 1840, leaving an infant son, who is still liv-
ing.   Henrietta Rudd is still living.

At the April term of the court of common pleas for this
county, Benjamin Hanners recovered two judgments against
Michael Malcolm, 2d, upon which judgment executions were
issued on the 4th of May, 1840, and the same were duly
levied on the 5th of May, 1840, upon the demanded prem-
ises, which were set off in satisfaction to the said Hanners in
two parcels, and the levies were afterwards recorded in the
registry of deeds, on the 3d of June, 1840.

On the 28th June, 1840, Benjamin Hanners conveyed the
demanded premises to George Parkman, one of the defend-
ants.   And Anstess Malcolm, the other defendant, widow of
Michael 2d, is in possession of the premises under said Park-
man.   The surviving children and grandchildren of Daniel
Malcolm are the only heirs at law of the testator.

If the demandant is entitled to recover, judgment is to be
rendered in his favor for such undivided portion of the de-
manded premises as the court may think him entitled to,
otherwise judgment is to be entered for the tenants.

*J. A. Andrew*, for the demandant.   The word "heirs," in
the devise over in case Daniel should die without any ma e
heirs, means heirs living at the time of his death; for this is
the only construction which makes all parts of the will con-
sistent.   The testator intended the gift over to take effect
only in case of an indefinite failure of heirs in tail.   The
devise over was in fee, not in tail.   4 Kent, 276 & following
& notes; 1 Jarman on Wills, 222, 223, 488, 490; *Bennett*
v. *Tankerville*, 19 Ves. 170; *Machell* v. *Weeding*, 8 Si-
mons, 4; *Ide* v. *Ide*, 5 Mass. 500; *Hawley* v. *Northamp-
ton*, 8 Mass. 3.   From these cases the following rules may be
deduced.   1. An estate tail is never raised by implication,
except it be to bridge over or prevent a possible chasm be-
tween the first devisee and the devise over.   Here there could
be no chasm, for Michael Malcolm, 2d, took an estate for life.
*Seaward* v. *Willock*, 5 East, 198; *Somerville* v. *Lethbridge*,
6 T. R. 213.   2. Nor can an estate tail be implied, unless

Malcolm *v.* Malcolm & another.

the words following the devise to the first taker be words of limitation, and not of purchase, and be so used in the will itself. 3. A limitation cannot be grafted upon a limitation; in other words, where there is a subsequent limitation, the words which are at first supposed words of limitation, are really words of purchase. *Jesson* v. *Wright,* 2 Bligh, 1; 2 Jarman, 388, 427. Lastly, the words "failure of issue" mean at the parent's death, where the parent's dying refers to a particular age, or where it is combined with any event personal to the individual. *Glover* v. *Monckton,* 3 Bing. 13; 2 Jarman, 428, 429. Here it was until twenty-one, in the will, and in the codicil until twenty-two; then to leave a male heir; if not, then devise over to his brother: two contingencies must come to pass; he must leave a male heir, and must die after twenty-two years of age.

*W. Dehon,* for the tenant, argued, that if Daniel did not take an estate tail by the rule in Shelley's case, he did so by implication from the limitation over. *Colson* v. *Colson,* 2 Atkins, 246; *Morgan* v. *Griffiths,* Cowper, 234; *Lindsey* v. *Colyear,* 11 East, 548; *Robinson* v. *Miller,* 1 Rolle's Abr. 837. [METCALF, J. A great many cases, which are reported in Rolle, are reported in other books, which do not always bear him out.] *Soule* v. *Soule,* 5 Mass. 61; *Hurlburt* v. *Emerson,* 16 Mass. 241; *Nightingale* v. *Burrell,* 15 Pick. 112; *Dubber* v. *Trollope,* Ambler, 453; *Goodright* v. *Pullyn,* 2 Ld. Raym. 1437; *Wright* v. *Pearson,* Ambler, 358; *King* v. *Burchell,* Ambler, 379; *Morris* v. *Ward,* cited 8 T. R. 518; *Measure* v. *Gee,* 5 B. & Ald. 910; *Jones* v. *Davis,* 4 B. & Ad. 43; *Mogg* v. *Mogg,* 1 Merivale, 654; *Cuffee* v. *Milk,* 10 Met. 366; *Osborn* v. *Shrieve,* 3 Mason, 391; *Parkman* v. *Bowdoin,* 1 Sumner, 370; *Parker* v. *Parker,* 5 Met. 139.

The case was also very fully argued on the rule in Shelley's case, the doctrine of *cy pres,* and the question whether Daniel's eldest son took an estate tail, if Daniel did not; but, in the view taken of the case by the court, these points became immaterial.

WILDE, J.　This is a writ of entry, in which the demandant claims an undivided part of the premises described in the writ, as having descended to him from his great-grandfather Michael Malcolm; and the tenants claim the whole of the said premises under a devise by the will of the said Michael.　And the decision of the case depends on the construction of the will.　The clause in the will by which the premises were devised is as follows : —

" I give and bequeath to my said grandson Daniel my dwelling-house in Middle street, wherein I now live, he to take possession of the same at the age of twenty-one years ; to hold the same to him during his life ; and at and upon his decease, I give the same dwelling-house and land to the eldest male heir of his body lawfully begotten, and upon the decease of such male heir, to the male heir of said deceased and his heirs forever.　And in case my said grandson shall not leave any male heirs, I then give said house and land to his next eldest brother during his life, and upon his decease, to his eldest male heir, lawfully begotten, and to his heirs forever."

It has been argued for the demandant, that by this clause the said Daniel and his eldest son Michael took estates for life in succession ; and that the remainder over to the male heir of the latter was void, as tending to a perpetuity.　And if such is to be the construction of the will, the argument is undoubtedly well founded, unless the last remainder can be supported by the rule in Shelley's case, or by the *cy pres* doctrine, as laid down in the authorities.

The rule is, that any limitation *in futuro*, or by way of remainder, of lands of inheritance, which in its nature tends to a perpetuity, even although there be a preceding vested freehold, so as to take it out of the description of an executory devise, is considered as void in its creation ; as in the case of a limitation of lands in succession, first to a person in *esse*, and after his decease to his unborn children, and afterwards to the children of such unborn children ; this last remainder is absolutely void.　1 Fearne, 502.　This is an

important rule of real property, and is applicable to the present case, if Daniel and Michael took only estates for life, for all the children of Daniel were born after the death of the testator; and, although a limitation to an unborn child is good, the limitation to his children tends manifestly to a perpetuity; it being a limitation of a possibility upon a possibility, which by another rule of law is not to be allowed *Chapman* v. *Oliver*, 3 Burr. 1626, 1634.

But if either Daniel or Michael took an estate in fee tail, these rules of law are not applicable, as the tenant in tail may bar the estate and alienate the property. The question then is, whether the will can, according to the established rules of interpretation, be so construed as to give an estate in fee tail either to Daniel or Michael.

In the first place, it has been argued, for the tenants, that Daniel took an estate tail, although the devise is in express terms to him for life ; such appearing to have been his intention from the subsequent language of the will; second, and if not, that his son Michael took an estate tail.

It is a familiar rule, in the construction of wills, that the intention of the testator is to govern, although it may be opposed to some of the words of the will; and that the general intention is to control any particular intention, especially when the particular intention relates to the manner by which the general intention is to be effectuated. If the intention of the testator can be carried into effect by the rules of law, the will is to be so construed as to accomplish his intention. And this rule of construction is decisive, if the intention can be clearly ascertained. It is true, as judge Story remarks, in the case of *Sisson* v. *Seabury*, 1 Sumner, 239, "that not only rules of interpretation, but expositions of certain phrases, founded in certain connections, in wills, are entitled to great influence in deciding other cases similarly circumstanced." But such expositions and decisions are to yield, if opposed to the manifest intention of the testator.

The first question then is, whether the testator's intention was to give to Daniel an estate tail, notwithstanding the first

part of the clause by which an estate for life only is given. In *Wild's* case 6 Co. 17, b, lord Coke lays it down as good law, and as so resolved by all the judges in England, that if A devises his land to B, and to his children or issue, and he hath not any issue at the time of the devise, that the same is an estate tail. And this rule of law has been frequently confirmed in subsequent cases. *Nightingale* v. *Burrell*, 15 Pick. 104, 114; Willes, 353. But it has been argued, for the demandant, that by the devise to the first devisee for life, and at and upon his decease to his eldest male heir, the testator plainly intended that the latter should take a remainder, and that "male heir" were not intended as words of limitation, but merely as a *designatio personæ.* On this point there are conflicting decisions. *Wild's* case, above cited; Willes, 348; Moor, 397 ; Doug. 431. But we have not found it necessary *to decide the case upon this point ; for admitting that if the* will had stopped here, Daniel, the first devisee, would have taken an estate for life only; yet taking into consideration the subsequent words of the will, it is manifest, that the testator intended that all the male issue of Daniel should take in succession ; and this intention cannot be effectuated unless he took an estate tail. The material words are, "And in case my said grandson shall not leave any male heirs, I then give said house and land to his next eldest brother during his life, and upon his decease to his eldest male heir lawfully begotten, and to his heirs forever." This clause clearly shows the intention of the testator to have been, that the eldest brother of Daniel should not take until after the failure of all the male issue of Daniel. The effect of this clause is, to enlarge the estate given in terms to him for life to an estate tail, in order to carry into effect the intention of the testator : *Ut 1 es magis valeat quam pereat.*

The intention of the testator, being manifest, is to be followed, if it may be without clashing with any rule of law; and it certainly may be, if the will is to be construed so as to give an estate tail to Daniel, the first devisee, with a contingent remainder over, after an indefinite failure of his male

issue, to his eldest brother. And we are of opinion, that upon the rules of construction, well established by the authorities, which are numerous, the clause may be so construed.

In the case of *Dodson* v. *Grew*, 2 Wils. 322, the devise was to George Grew for life, and after his decease to the use of his issue male, and the issue of such issue male, and for want of such issue male, then over. And it was held, that by the words of the gift over, the estate given to George Grew in terms for life was enlarged to an estate tail. Chief justice Wilmot remarked, in delivering the opinion of the court, that the intention of the testator clearly was to give George Grew an estate for life only ; but his intention also clearly was, that all the sons of George Grew should take in succession : both these intentions cannot take place ; therefore the court must put themselves in the place of the testator, and determine as he would have done. If he had been told that both of his intentions in the will, by the rules of law, could not take place, and had been asked which of them he desired should take effect and stand, as both could not, he certainly would have answered, that so long as George Grew had any issue male, the premises should not go to the lessor of the plaintiff ; and if we balance the two intentions, the weightiest is, that all the sons of George Grew should take in succession.

In *Brice* v. *Smith*, Willes, 1, the chief justice lays down the rule of construction, in cases like the present, as then well established. He says, it cannot be doubted now, after so many solemn resolutions, but if a man devise an estate to A and his heirs, and afterwards in his will give his estate to another, in case A dies without issue, the subsequent words reduce A's estate to an estate tail, and restrain the general word "heirs" to signify only "heirs of the body." "So, likewise, if a man devise an estate to A, or to A for life, without saying more, and afterwards in the same will devise the estate to another in case A dies without issue, these subsequent words will enlarge A's estate by implication, and give

him an estate tail. And this is founded upon these known rules, that the intention of the testator shall always take place in the construction of wills, so far as it can be collected from the will itself, and if it be not contrary to the rules of law ; and that the priority or posteriority of words in a will is not at all regarded, but that the whole will must be taken together to find out the intent of the testator." This rule of construction, and the reasons on which it is founded, have never since been questioned, but have frequently been con firmed by subsequent decisions. In *Ellis* v. *Ellis*, 1 East, 382, the devise was to the testator's son Joseph, his heirs and assigns forever ; but in case he should die without issue, then over. It was argued for the tenant, that Joseph took a fee simple, determinable on a particular event, not on an unlimited failure of issue, but on his dying without issue at the time of his death ; which event did not happen, and therefore the devise over never took effect. But it was decided that the words, " in case my said son Joseph shall die without issue," must be construed to mean a general failure of issue. Lord Ellenborough said, " The general rule is clear." And he refers to the case in Willes, " as deciding that the word *then*, which was merely a word of relation, and not an adverb of time, made no difference." That, he says, " is extremely decisive against the only word upon which originally any argument could have been built."

This rule of construction, therefore, is well settled, and the only question on this point is, whether it is applicable to the construction of this will. The words in the will are, " in case my said grandson shall not leave any male heirs," then over. In *Porter* v. *Bradley*, 3 T. R. 143, the devise was to A, his heirs and assigns forever, and if he shall happen to die leaving no issue behind him, then over. All that was decided in that case was, that the limitation over was good by way of an executory devise. The remarks of lord Kenyon, therefore, are not material in this case : as the construction given to the will in that case was in no respect inconsistent with the intention of the testator.

In *Daintry* v. *Daintry*, 6 T. R. 307, 313, the words were, "If my said son J. Daintry shall happen to die without *leaving* issue of his body," then over; and lord Kenyon held, and the court so decided, that the words were sufficient to raise an estate tail by implication.

In *Tenny* v. *Agar*, 12 East, 253, the devise was to the testator's son and his right heirs forever, and then, on a contingency, to his daughter and her heirs forever; "and in case his said son and daughter both happen to die without leaving any child or issue lawfully begotten, or to be begotten," then over, to R. Agar. It was argued for the plaintiff, that the devises to the son and daughter were not restrained to estates tail, but that the devise over was good by way of executory devise. But the court, without hearing the counsel for the defendant, held that the devise over was not an executory devise, but a remainder limited after successive estates tail of the son and daughter by implication; this being the only construction which could give effect to the intention of the testator, consistently with the whole will taken together. Lord Ellenborough remarked, "We have heard a laborious and ingenious argument, which has endeavored to cloud an intention as distinctly and plainly expressed as a testator could have done, and which, if not expressed in terms, is plainly to be inferred from the whole will. Nothing can be clearer than that R. Agar was not intended to take any thing until the issue of the testator's son and of his daughter were all extinct; and that intent can only be effected by giving to the son and daughter successive estates tail." And Le Blanc, J., says: "It is a known rule of law, in the construction of wills, that if a devise over can take effect as a remainder, it shall not be taken to be an executory devise. There is no case where the words "die without leaving issue," simply, have been adjudged to mean "without leaving issue at the time of the death;" in *Porter* v. *Bradley*, there were also the words "behind him."

In the case of *Nightingale* v. *Burrell*, 15 Pick. 104, the

words were, " But if my aforesaid daughters should die and leave no children," then over. And it was held, that the contingency of dying and *leaving* no issue was precisely equivalent to dying *without* issue, and looked to the general failure of issue before the devise over was to take effect.

So in *Osborn* v. *Shrieve*, 3 Mason, 391, the devise was to the testator's son and to his male heir, (in the singular,) and his heirs and assigns forever; but if it should so be, that the said son should depart this life *leaving* no male heir, then to one of the testator's grandsons in fee. This in all respects is similar to the will in the present case. And it was held, that the son took an estate tail with remainder over to the grandson in fee. Judge Story said, if the case were entirely new, he should not hesitate to give that construction as the only one which would effectuate the general intention of the testator, but that he considered the question hardly open ; and so it appears to us.

There are numerous other cases, which have been decided upon the rules of construction of devises, many of which are cited in the case of *Osborn* v. *Shrieve*, and in *Sisson* v. *Seabury*, 1 Sumner, 235, and in 2 Crabb on Real Property, 27–41. But in all the cases, there has been no dispute as to the rules of construction. The great difficulty has been in the application of these rules to the various cases, and to ascertain the intention of the testator.

Now, we think there can be no doubt of the intention of the testator, in the present case. He clearly intended, that Daniel and his male heirs, meaning issue, should have the property so long as any issue remained, and that the eldest brother of Daniel should take nothing until the extinction of the whole line of the male issue of Daniel; and this intention cannot be carried into effect unless Daniel took an estate tail, with remainder over to his eldest brother. And we have no doubt, that upon the undisputed rules of construction, the will is to be so construed as to give an estate tail to Daniel ; and that upon his decease, the same descended to Michael, his eldest son, and by the Rev. Sts. *c.* 60, § 29, was liable to be taken on execution for his debts.

This being the opinion of the court, it becomes unnecessary to consider the tenant's second ground of defence, or the able argument of the demandant's counsel, as to the rule in Shelley's case, and the doctrine of *cy pres,* as laid down in the authorities. *Judgment for the tenants.*